The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention where the court is now sitting. God save the United States and this honorable court. Thank you, Your Honor. Good morning and may it please the court. My name is Brad Banas and I represent the petitioner Victor Jimenez-Rodriguez. This court should join the 11th Circuit and the 7th Circuit and hold that IJs have jurisdiction to consider waivers under 8 U.S.C. 1182 D.3 for U-status applicants. Because the board and the immigration judge made a legal error by determining they did not have jurisdiction to do this, this court should vacate their decisions and grant this This case presents one straightforward legal question of the interpretation of the plain language of a statute, Your Honors. That is, whether Congress gave the Attorney General and his delegates, the immigration judges, authority to hear waivers under 1182 D.3 for U-status applicants. This court need go no further than the plain language. I'm sorry, can I ask you a question? It seemed that there were sort of two questions floating around this case. One is whether Congress gave the Attorney General the authority to grant these waivers and then the other was, and this is what Kahn holds, that even if the Attorney General has the authority, it hasn't been delegated to the individual immigration judges. So which question do you think is really in front of us? Where do we start with this? Yes, Your Honor. I think LDG v. Holder addresses that issue very clearly and I think that the question is what Congress did because the agency, neither through an administrative tribunal nor a regulation, can put a limit on the authority that Congress gave immigration judges. But to that point, Your Honor, the statute says, it goes to the Attorney General, and the regulation at 8 CFR 1003.10 indicates that immigration judges shall exercise the authority by the act and by the Attorney General through regulation. I believe matter of Kahn attempts to use that and as a limiting principle rather than recognizing it as an additional principle. Immigration judges have authority to do what the act tells them they can do as well as additional things that the Attorney General allows them to do through regulation. But I thought your statutory argument was that the act gives the Attorney General the authority. You think the act by plain terms actually confers authority on individual immigration judges somewhere and where would I find that? Your Honor, I think it gives it to the Attorney General and the Attorney General gives it to the immigration judges as his delegates. Where does the Attorney General give it to the immigration judges? In that regulation, Your Honor, at 8 CFR 1003.10A, where it says the immigration judges shall act as Attorney General's delegates. And then in the provision I just quoted just below that in B, that says the immigration judges shall exercise the power, not discretionary, shall exercise the power and duties delegated to them by the act and then also by the regulations. I'm sorry, I've taken too much of your time. Which of those two things are you? It sounded at the beginning that you were saying the power to grant these waivers had been delegated by Congress to IJs. So you're relying on the act word in that sentence. But then when I asked you what was going on or asked you to explain, it sounded like you General delegated his or her power to the IJs under subsection A. Your Honor, I think you're exactly right. That the statute gives the Attorney General power and the Attorney General has in turn delegated that power without limitation to the immigration judges. And Your Honor, I do not believe the government disputes that immigration judges have authority to hear waiver applications under D-3. What their dispute is, is they do not have authority to hear waiver applications under D-3 for one subset of, quote, aliens, and that is eustatus applicants. They admit that under certain regulations, the immigration judges have jurisdiction to hear D-3 waivers. They just say they can't hear it for eustatus applicants. Their primary arguments are twofold. One, that the existence of a separate waiver exclusively for eustatus applicants somehow expressly or implicitly repeals that grant of authority that's unlimited under D-3. And again, I would point this court to the excellent analysis in LDG v. Holder. That's the first circuit court to address this decision, Your Honor. And I think it did the best job, frankly, that it said, you know, these two waivers can be read together to work together. And that's what the court's job is to do, is to find a way so we can go through the process. So if we accept your argument that the plain language of this D-3A does permit the attorney general to grant waivers of inadmissibility, and in turn, that is delegated by HCFR 1003, then what type of jurisdiction are we talking about here that exists in tandem with the USCIS, which also I don't think you dispute in any way that they, too, have this authority. So you have two different entities that have it, and one acts as the other. Is it sort of like the state-federal sort of jurisdiction thing, or what is it? I mean, if one acts, does it preclude the other? And where would we determine that from, other than I know that we have a couple of sister circuits that have pretty much given us their thoughts on it. Yes, Your Honor. I do think that D-3 provides concurrent jurisdiction. And this is something we see throughout the Immigration and Nationality Act. Something that this court sees on a regular basis is that both USCIS, as well as the Immigration Court, have the ability to grant a different benefit called adjustment of status. So when that happens, is that a result that effectively there's two bites to this apple that exists? I mean, if you don't get it from one, you can go to another? In this particular circumstance, I don't think that's an accurate representation. But for example, in the adjustment of status context, it absolutely is. You get denied adjustment of status by USCIS, you then renew the application from the immigration judge. Yeah, I wasn't trying to read it so much in this particular one. I'm just trying to understand if we hold this, what does it mean? It may not be in this particular one, but it certainly will follow from it. And I mean, that exists in other areas too. I mean, you have a state-federal jurisdiction that's concurrent, and you can go to one or the other. But in this instance, your client has not gotten the answer he wants from the USCIS, but he wants now the IJ to exercise authority. Now, is the issue in this case fairly narrow? Because as I see it, it's not a question of what the IJ will do. It is a holding that was essentially that it didn't have the authority. And so all we need to do is determine, does he have the authority? What happens from there is whatever happens on remand. Is that right? That's correct, Your Honor. That's absolutely correct. And so this question is fairly, I wouldn't say simple, but certainly straightforward. It is simply a determination, does it have the authority? If it doesn't have the authority, then that's the end of it. If it does, then we just say, okay, you got the authority, you can do it. But he's not... You said something about mandatory. He's not required to rule even to do it, is he? Because it's a delegated authority, but he doesn't have to do it. I would think he could consider it's already been done or those things, but that may be for another day to decide. But I'm just thinking out in terms of what does it mean to simply say he has the authority? Your Honor, I do think that a IJ under the regulations has a duty to decide the applications before him. And in this situation, they said, we don't have jurisdiction to do it, so we're not going to consider it. And so if this court finds that it has, that the agency, excuse me, EOR, has the ability and has the jurisdiction to consider these waivers, then I think it would go back to the immigration judge. And in this particular situation, Your Honor, these particular facts where my client has applied to CIS and then applied for an appeal of that. And again, very narrow issue, Your Honor. The decision on appeal said he was eligible for the actual EU status, but not eligible for the waiver. And so all he would be doing is applying for a waiver in front of the immigration judge. And if they in this situation, I don't think there would be such say that again. He's eligible for the status, but not the waiver because of the intermissibility. Your Honor, EU status is a is a complicated thing. This court just wrote a very excellent decision last week, a 35-page decision explaining kind of the administrative and the eligibility criteria. But essentially it comes down to this. If you're a EU status applicant like my client who was brought here as a child and illegally entered the country, you have to apply for EU status as well as a waiver of intermissibility at the same time. And under the EU status regulations, the agency, CIS, cannot grant EU status unless they also grant the waiver. So they do the decisions at the same time. So you have essentially a joint decision. And so if you get a court of EU status, that means they've granted both the waiver as well as the status. But you can have a decision like we had here where they say, yep, you're a victim of a qualifying crime. You helped the police. You meet all of these eligibility criteria, but we're not going to grant the waiver and because we're not granting the waiver, we're denying EU status. And so it's only in those situations where renewing a waiver in front of the immigration judge would actually remedy the issues for these folks. If he got denied on EU visa eligibility criteria, he can't renew that in front of the immigration judge. We're not arguing that. It's just this narrow issue of a waiver. And we're not even suggesting that the immigration judge can do a D14 waiver. He's more limited to the D3 waiver, which is less expansive. I'm sorry, Judge Harris. I'm sorry. I just, I want to sort of follow up on what Judge Nguyen was asking and make sure I understand your position. If we were to hold that the immigration judge has authority to consider this, this authority has been delegated by the AG to the immigration judges and removal proceedings. In your view, would it be okay if this was sent back to the IJ and the IJ said, I'm not granting your application. The people over at CIS denied it. I, yes, I think that would be okay as long as he recognized the authority that he has the ability and jurisdiction to consider it, he can make whatever decision he wants or she wants. Basically, it'll be okay for you that didn't make an appeal back to us saying that he already doing so, if that's all he does, that's what you say. Well, your honor, a waiver is discretionary and discretionary relief doesn't make it to this court, frankly. But I will note that I can see a role for prudential exhaustion doctrines to develop. The government, their second big argument is this is just impractical, right? We're going to, that they paint the scenario where people in removal proceedings who don't have new status applications pending are just going to come in and ask for a waiver. And in such a situation, I can see an immigration judge saying, hey, I have jurisdiction over this waiver, but you haven't even applied for the separate status. You haven't given CIS an opportunity. And so I'm not going to hear it. I'm going to deny it as, and then choose not to hear it under, again, in federal courts we call it prudential exhaustion, and I'm not sure we call it immigration court. Yeah. I'm more worried about the situation in, was it Meritor, one of the cases you're relying on in the 11th Circuit, where, you know, like they kind of fought about it, like the IJ wanted to grant it, CIS didn't want to grant it. It was sort of a race to see who could get an opinion out first. And then a lot of collateral litigation about which one was controlling. And I think that's, that's sort of the concern I think that's front and center about this idea that you would have two competing determinations, and then a lot of litigation trying to figure out which one of those would control. Counsel, Judge Harris mentioned, and aptly so, the two peers that you, so that we went along the discussion as to the IJ. But wouldn't you agree that if the Attorney General doesn't have the power to do this, then clearly the IJ couldn't, right? It's derivative, right? I'm sorry, Your Honor. Immigration Judge. I'm sorry, Your Honor. Can you hear me? Mike? I can now, Your Honor. I'm sorry. Mike, can you hear me? That the IJ can only do this if the Attorney General could grant this, correct? Yes, Your Honor. And I don't think the government disputes that. Say what now? Say it again? I don't think the government disputes that IJs have the authority to grant D3 waivers. They do in other circumstances. They just say it doesn't extend to you status applicants. Okay, what about the idea that the Attorney General can only do it for people outside the United States, the Third Circuit? Your Honor, my answer is twofold to that. First, the actual language of the statute, the plain language, says it's for people seeking admission. And admission is a legal term of art in immigration law. People regularly inside the United States seek admission to the United States as a legal matter. And that would be my first point. The second point is if you look at the subsection just above. So this is technically 1182 D3 AII. If you look at D3 AI, it identifies a separate provision and separate authority for a consular officer. That is someone outside of the United States. And so they've taken into account people seeking admission from outside the United States in a different provision. They've separated out. And so the Attorney General can do this too. And so this idea that this is limited as they identify in the Third Circuit and someday to folks seeking admission, I think it's a narrow view of the term admission in immigration law, that admission can only be from outside the United States. I think that people seek admission from inside the United States all the time, just through different legal mechanisms, such as a U-status applicant. Just to put again, back to the visa. They get a U-visa. After three years as a U-visa holder, they can then apply for adjustment of status. To qualify for adjustment of status, you have to have been admitted in lawful presence. And so the U-status is seeking admission to the United States. And again, I think, well, I should say someday, the case out of the Third Circuit really narrows, unnecessarily narrows the definition of admission and kind of misreads it in the immigration context. The Third Circuit just got that wrong. That's your answer. With all due respect to the Third Circuit, Your Honor, that's my answer. All right. I think Judge Harris has a question. Sorry, just because I know you're running out of time. And I want to go back to the regulation, because as I understand your argument, and this is how I understood it from the brief too, you're with the Seventh Circuit and the Eleventh Circuit. I just want you to respond to the concern I have about this, that when I look at this regulation at a whole, the first one, A, subsection A sort of describes what an immigration judge is. The title is appointment. And it just says, this is what immigration judges are. They're the attorney generals, delegates in cases. But it's subsection B that talks specifically about what are the powers and duties of the IJ. And in that one, it seems to say you need what they can do in these hearings as the AG's delegates is what has been delegated to them through a regulation. And so I'm having trouble reading the regulation as a whole to mean that sort of B is superfluous. Everything has already been delegated. Your Honor, I think our argument is that that first, let's say the second clause of the first sentence says that the IJs shall do the powers of the act as well as things that are done by the regulation. But you already told me, I thought before, that there's nothing in the act that delegates to the IJs the authority to do this. That what the act does is give that authority to the attorney general. And then as I read B, it sounds like what you need now is some regulation that delegates the attorney general's authority to grant these waivers in this context to IJs. And Your Honor, if I may answer it in two points, and then I'll sit down and let my opponent come up. I think our argument is this is a general delegation of all of the authorities of the attorney general. That's the first point. The second point is, again, the government doesn't dispute that IJs have been delegated the authority to hear D3A waivers. They do that. They don't dispute that. They say that that delegation of authority doesn't include U-status applicants. And I do not think they can both say it delegates authority to the immigration judges to hear D3A waivers. And that delegation has no limitation to U-status applicants in the statute or the regulation and go from there. So I guess that's our answer, Your Honor, on the regulations. Thank you so much. Thank you. Let me start by, I guess I'll apply Robert, may it please the court, Robert Tennyson for the government. Briefly, let me apologize for dropping. Also, I sent you a 28-J letter yesterday. I apologize for that being late. And when I referenced, I guess what, the site in Mendoza, in Mesa, Mendoza, I had referenced the earlier Mesa, Mendoza case out of the Seventh Circuit, not the more recent one, which is at 973 after 656. The point is the same that immigration judges, well, that a grant of a waiver, of a D3 waiver does not result or does not, what, forestall the removal of a non-citizen in proceedings. So it doesn't matter. I mean, it doesn't matter which one I cited, but the end point is the same. And let me get to the particulars of the argument. I think there are two things I want. There's one thing I want to focus on, and that is the problem of attenuation here. First, under 1229A, immigration judges, 1229A-A. Before you go there, Eleanor, you made a point. I think you were speaking to D3A guarding the attorney general, saying the attorney general may not grant waivers of admissibilities to non-citizens already present in the United States. Is that the point you were making earlier? The point I was making earlier out of Mesa, Mendoza, isn't that... Let me ask the question. I know it's in your brief. Is that a point you were standing by today, I should say? That the immigration judge cannot grant a D3 waiver for somebody who's already been admitted into the United States? Yes. Because the waiver language itself requires someone who is seeking admission into the United States. So give me your answer to the 8 U.S.C. 1225A-1, which states an alien present in the United States who's not been admitted shall be deemed an applicant for admission. And square that also with the DHS's own regulation, which is at 8 CFR 212.17, which states that U-Visa applicants may seek a D3A waiver. Right. What I... That's what I want to ask before you go. Do we just ignore those things? I mean, give me the straight up answer first. Because it'll get lost on me. Okay. The straight up answer is, if you've already been admitted to the United States, and I believe that was the case of both Marador and Mann, the individual had already been admitted to the United States in some status, then the U-V... Then the D3 waiver isn't applicable to you. Actually, the case here is not like Mann or Marador. The petitioner in this case is in fact the one who entered the United States unlawfully and is therefore, you know, and is inadmissible. So the question is, U-S-C-I-S has and does grant waivers of inadmissibility to individuals who are inadmissible in the United States. So that's not, I think, I don't think we're going to stick... That's not an argument insofar as it has to do with individuals who are inadmissible. That is necessarily the case. It is one that... So that's the division. That's the dividing line between someone who's been previously admitted or someone who hasn't. So the petitioner here hasn't been previously admitted. That's not going to forestall a waiver. What does forestall a waiver or what does give the board the ability to construe the availability of the waiver has to do with two things. First, that language about admission into the United States, someone seeking admission and who then has documents or who has a waiver of the documents. Under the language of D-3-A-2, it's broad enough that there's a question about whether or not, how far in advance or after, whether or not it is attenuated in time. The waiver is attenuated in time from the grant of admission, through the grant of the U-Visa. Yes. I just want to... I understand your argument. This all goes to the point, if I'm understanding right, that the attorney general doesn't have this authority under the statute, right, to grant waivers in this particular circumstance you're talking about? That in this particular circumstance, the attorney general doesn't have the authority. Okay. Let me stop you there. My question is why that's properly before us. Kahn didn't say that the AG doesn't have the authority. Kahn said, we'll assume the AG has the authority. It hasn't been delegated to the IJ. In the case before us, all the BIA said is we're following Kahn. The IJ hasn't been delegated this authority. So how is this ground, which the agency didn't rely on, available to us as a reason for denying this petition? I don't understand why we're talking about this at all. Right. Your Honor, I think that this is in response to the petitioner's argument. The petitioner's argument is full board that the statute requires immigration judges to do this. Our response is to that. You're right. If that is the case, then it's not an argument that petitioners, insofar as... I'm confused on that answer. I don't know quite how you answered that right there. The question's simple. Even if the AG has such authority, the question is, do you not agree that if the AG has the authority, then the IJ has the authority? That's what seems like you've been answering the whole time, but I don't know where you're going with this now. Is that true? Okay. If the AG has the authority, then the IJ has it. Is that correct? That is not correct. Because the AG can have the authority to grant that outside of the context of removal proceedings. Say, for example, under the regulation, it is possible for an individual who has been from abroad, or even at the border, denied the D3 waiver, not to go into immigration proceedings to contest it, but within 15 days to go to the board and contest it, outside the context of removal proceedings. Just because the attorney general has the authority to grant that waiver in some context, does not mean it has the authority to grant that waiver in the context of a removal proceeding. The sole purpose of a removal proceeding is to determine inadmissibility or deportability, and whether that is foresawed by either relief or protection, that immediately ends the removal proceedings. If an immigration judge grants the D3 waiver, that does not end removal proceedings. The immigration judge can then just go on and order the individual removed, and then we wait. And what we wait for is USCIS to actually adjudicate the U visa. There are two attenuations. You will... Yes, Your Honor. Before you get to attenuation, I just want to make sure I am understanding where we are in this argument. So your colleague says, what are you talking about? Of course, IJs are authorized to grant these waivers, and we know it, and the government wouldn't contest that they're allowed to grant D3 waivers. And so your response to that, as I understand it, is what the BIA said in Khan, basically, which is, no, no, they're authorized to grant them only outside the context of removal proceedings, this particular thing on review from the district director at the entry point. But that's the only context in which they can grant it. They're not authorized. There's no regulation authorizing IJs to exercise whatever power the AG might have in the context of a removal proceeding. That's your response to what your colleague has been saying? That is correct, Your Honor. Okay. That is correct. On that point, are you arguing that, however we might read these regulations, we would Yes, Your Honor. That this is a Chevron step two question in that regard. Yes. Wouldn't it be an hour question? Oh, it would be an hour question under the regs, or a Kaiser question. Yes, Your Honor. All right. Sorry, this is my last question. I did not, to the extent this delegation question turns on this regulation, this kind of housekeeping regulation at 100310, I didn't see the BIA really construing that regulation or analyzing that regulation. So our reading on this one would be de novo, right? I would say that the board is, okay, I suppose so. The board is, insofar as it's looking at identifying 1003.10B as the source of delegation authority, I think that it does that because it's identifying which provision has to do with delegation. I don't think that every time the board identifies a particular provision and says, this one's relevant and we're talking, these are the relevant provisions, and we're talking about these, that the implicit, these aren't relevant, somehow is something that's not considered. This court can actually consider it. So the board doesn't have to go through, unless there's some reg that necessarily talks about this, there's no reason for us to be looking at other regs in the vicinity. But if this court thinks that it should have looked at 1003.10A in addition to the 1003.10B, then it needs to go back to the board to identify, to look at both regulations and construe them together, rather than just saying the board's construction is unreasonable, if that makes sense. It does, but can you tell me, can you show me where the board construed any part of this regulation? I mean, what it was construing, it didn't construe any part of 1003.10A, right? It's construing 1003.10B. It didn't construe 10B, and it cites it, it just cites .10 altogether at the end of a series of quotes. But there's no, it's not like the BIA says, let's look at the language, here's how we read it. I mean, I just don't see what we would defer to. Right. I think the board sort of, and maybe it's because the board has historically taken that construed, the statute, I mean, the regulations to sort of generally, what? Require or generally infer a, not to infer a delegation in the absence of a specific delegation. Does that make sense? So unless the regulation specifically delegates something, the board has historically taken that and has generally considered that to just be a point, a given point. So it'll cite it, there's this history to it, if this court needs me to further brief that history, that's fine. But this seems to have been a background proposition that the board has held, and then cited to the particular provision in that regard. And then said, look, there is this single exclusive delegation here, right, in 1235. And that's it. And outside of that, that's the extent of the attorney general's, of the extent of the delegation of the attorney general in these cases. So to answer your question, is it developed? No. Did the board think it had to develop it? Probably not. Does it stand as sort of a general, as one of its background principles of how it understands it? I believe it does. Thank you. This case seems to be getting more and more complicated. It started with a very simple question. Can you just answer this simple question? Do you contest the fact that the IJ said it lacked the authority to grant the D3 waiver? The IJ actually didn't address the D3 waiver. It was only the board that addressed it. And the board just said, we. Do you, do you, do you, do you stand behind that, that they lacked the authority, they didn't address it? That the board said we don't, that IJs don't have the authority to grant the waiver. That's right. That's full stop in this decision. And they said it in con as well. I know that. That's why I'm asking, do you stand behind that decision? Yes, your honor. Okay. All right. And you do so because, and tell just simply, why, why does it lack that authority? Because that would be the end of the story. If he goes back, we know that a lot of things may be considered. But why do they lack that authority? Um, because the express delegation to hear particular, uh, to hear the waiver in particular instances where it has an impact on removal. I don't want you, I'm talking about this instance right here. I don't want to talk about a law school exam question. I'm talking about this case under these facts. Why does it lack the authority to grant the D3 waiver as the BIA suggested it doesn't? Why? Why not? The board in this case, right. The board in this case purely said the reason why the IJ doesn't have the authority to grant the D3 waiver is the reasons we gave in con. Um, and then cited to con, I believe it also cited to, uh, Marador and Sunday, but it definitely cited to con and said, as a result, there's no authority to adjudicate the D3 waiver for you visa. And so we're not going to remand the petitioner's case back to the IJ to hear it. Well, as Jeff had said, there are limitations in that holding. So you got to live with that. Right. So is it explained why the, that wouldn't really reach. Well, it was just assumed. I mean, tell me why you can rely on con for that proposition. For that proposition, uh, that the IJ can't adjudicate the waiver. Um, crucially solely on that reason. Why, why? Because that case governs the question of whether or not an IJ can grant the waiver to someone seeking a U visa. And so it, and because that case says full stop, you can't do it. The IJ can't do it for someone seeking a collateral U visa waiver. The petitioner in this case who is seeking to have his case remanded for an IJ to make that determination cannot get the remand because the IJ can't grant the waiver. So, so you have a lot of reliance on the matter of con case, which, uh, or decision by the BIA and say, we should give it some deference. But, but that decision, correct me if I'm wrong, never mentioned, nor even discussed HCFR 1003.108, did it? It didn't even mention it, did it? No, your honor. It did not. No, it didn't. Secondly, let me ask you the other thing. Why in the world would this case that was decided in 2015 and 16 rely upon the predated version of 212.4b, which was amended 2011. But that's not the part it relied upon. If you look at the language it used, it uses the language that was amended. Why did it do that? That's got to be error. Um, I mean, look at it, look at it. It's the pre 2011 language to conclude that this authority exists. How in the world can we give deference to something, to a decision that paid no attention to the language that came about in 2011? Right. Right. Meaning how can they do it? All right. Meaning they did. Give me a moment today. One thing is, is I think that the language sort of, there's, there's the, there's the change. Let's agree on at least in terms of what we're talking about is no question that the matter of con relied upon the pre 2011 language. No question of that. It looks, it's reading right there, right? And you got 2011 language that comes about and it makes this decision in 2015 or 16. And it's got this earlier language is relying upon. How do we even think about giving a decision like that deference? Because it's wrong. Right. Uh, I, right. I think, and let me see which, I want to make sure I know which provision you're pointing to. It's, uh, it's 12, 12.4 B. Is that what you're pointing to or which section? 12.4 B used to state before 2011 that an application for D three A waivers shall be submitted on a form. I one 92. Here's the language to the district director of the official in charge of applicants intended port of entry. That's the language they use. They changed that language in 2011. And yet this decision relies on this pre 2011 language. Right. And it's decided in 2015 or 16 or so. Right. How do we get that deference? I'm sorry, Chief. You have to tell us why that change wouldn't make any difference in the analysis, right? That's how, that's the structure of an argument. Right. Right. Uh, let's, I think the difficulty and the board actually cited out the problem in, uh, in the regulation, right? I mean, there is footnote six and con that has to do with the notes that those regulations, that the regulations are outdated, um, and make reference to the former waiver in other sections of the act. Um, but those provisions, you know, it, it, it notes that that language is out of date and says it doesn't make any difference here essentially in footnote six. So con does appear to address that question and says there's not, it makes no difference with regard to the, to this section. Um, very briefly, it looks like my time's up. There's just a, the board had this attenuation issue that it had to deal with, right? The statute has two attenuation problems if you apply the U visa or if you apply for the U, for the waiver, for the collateral U visa. The first is it's attenuated in terms of removal proceedings. That is removal proceedings are about removal, inadmissibility, deportability, determine whether, determining whether or not an individual is removable, removable, granting the D three waiver doesn't appear to do anything with regard to that question of removability. That's one. Two, there's the 10 attenuation of time problem. That is that granting the waiver by traditionally granting a waiver by an immigration judge doesn't mean that the U visa is going to be granted immediately. And in fact, you may have to wait for that U visa to be granted down the road. Here, that's not the case. Petitioner already applied and it was denied. So the board had those two attenuation problems. One, the attenuation from removal proceedings. Two, the attenuation in time problem. Con is a response to that. And the response is IJs can't grant these in removal proceedings because it's so far abroad. And that's what, and we're looking at, you know, and here's the circumstance when we can grant it because it isn't attenuated. And also there are all these administrative problems that result if we do a grant, if we do grant the waiver because it's attenuated in time. If the court has no further questions, the government rests. Thank you. Thank you, your honors. Just two quick points. One, I think we need to look at and see exactly how Con worked. Con identified an ambiguity by looking at two different statutes and determining that their interplay created an ambiguity for it to interpret. That's simply wrong. The plain language of the provision. Counsel, counsel, can I ask you the same question I asked your colleague? I'm with you on Con. They say there's an ambiguity. There's a lack of clarity in the interplay here. But then what Con says is we don't have to resolve it because even if the AG has the authority, it hasn't been delegated to the IJ. So I have the same question for you I had for my colleague. I don't see how the preliminary threshold question, does the AG have the authority, is before us. Like it wasn't relied on by the agency in this case or in Con. And we could not deny the petition on that ground, grant it on that ground. It's just not in front of us because it's not what the agency relied on. And Your Honor, I can only respond by pointing to the analysis in LDG versus Holder. But LDG and LDG, nobody was contesting. It was taken for granted, I think, based on prior Seventh Circuit law that if the AG had this authority, so did the IJ. So the only question they had in front of them there was does the Attorney General have the statutory authority? I would point you to whatever the follow-up Seventh Circuit decision is where they say exactly what I'm saying now. The AG came to court and started making all these statutory threshold arguments about the AG's authority when we're only reviewing the BIA's decision that if the AG has the authority, it hasn't been delegated to the IJ. And we can't reach that in front of us. If they want to raise that on remand in front of the BIA, they're free to do that. But the government can't rely on that in front of us. So I just don't understand why. I mean, it's an interesting question, but I don't see what we can do with it. Well, again, this is my reading of LDG. And I, of course, defer to yours, Your Honor, is they say that the statute that's relevant is plain and that no regulation can limit the authority that Congress has given to the Attorney General and his delegates. And they cite to 1003.10a and identify the immigration judges as delegates. And this is what they say. We're not free to write in a limitation on the Attorney General's powers that Congress does not impose. Your Honor, I understand the gap you're pointing out. I really do. And it may be something best for the board to finally analyze. But I do think the decisions in Meridor and LDG, as well as its progeny, do answer the court's question. Because I think it is the statute says one thing, and the regulation can't contradict the statute. And I think, too, we need to look at another Seventh Circuit decision. That is the Baez-Sanchez decision. That's the one I was trying to say. That talks about delegation to IJs. And it also rejects Conn, Your Honor. And I don't disagree with that. Conn is properly rejected. There's no question in my mind about that. Maybe others find differently. Conn is relying on this pre-2011 language inexplicably. That language was removed by a 2011 amendment. And it's got it right in there. That makes no sense to me. I don't know how you write out and say that's not consequential when it's relying on it. So I have a serious problem with giving deference to Conn in this case. So then we look at guidance from our sister circuits and how they've done it on it. That is a case that was discussed there. But I think the bottom line is just a question of, did they have the authority to give it? End of the day, I don't see what the big problem is, to be honest. And, Your Honor, I think, if I may just respond in one very short point. Your Honor identified at the beginning of this argument, this comes down to one question, whether they have the authority to do this. And I think Judge Harris points out the gap that Congress gave them that authority. But we need to see the authority and the regulations to the immigration judges. I think Conn doesn't address, really, that second point. And if it does, it's not worth it. Well, your point being that the plain language of the statute speaks to it. You can't regulate it away. That's really something we have to decide. You know, if the Congress gives it, you can't, the agencies can't come out and do it and take it away. They seem to have the main authority here. I think that's the lesson from LDG. And just a very quick last point. I know your time is precious. The government keeps raising this question of attenuation. And I would just say, we haven't seen the parade of impracticalities in the Seventh Circuit, the Eleventh Circuit, that the government raises from these issues. And secondly, this idea that these, you're going to have a waiver decided before the use status application is decided. I think if you look at all of the facts and all of the cases we're discussing, that's just not presented. And I, you know, in my initial argument, I noted that if someone tried to raise a waiver for a non-pending use status application, I think the immigration judge could say, hey, I have authority to review this application, but it's not right. It's not exhausted. Whatever that answer is. And frankly, the wait times are just another part of the use status program that is unfortunate and broken, that it takes 57 months for USCIS to make a decision on one petition. That shouldn't come into the analysis of whether the Congress gave the attorney general authority to do this, and he delegated it to the immigration judges. Thank you, your honors. We would ask that you grant this petition and remand it to the immigration judge. Thank you, counsel. We appreciate both of you for your fine arguments. I wish we could come down and greet you. And thank you, a virtual shake. Thank you so much. We really appreciate it. Please know we wish you well. Stay safe and be well. Take care, counsel. Thank you so much.
judges: Roger L. Gregory, James A. Wynn Jr., Pamela A. Harris